Brian A. Ertz (ISB# 9960)
ERTZ LAW, PLLC
Post Office Box 665
Boise, ID 83701
Telephone:     (208) 918-1663
Facsimile:     (208) 545-9770
Email: brian@ertzlaw.org

Stephen Harris (CO State Bar #24178)
ALPERN MYERS STUART LLC
14 N. Sierra Madre Street, Suite A
Colorado Springs, CO 80903
Telephone:     (719) 471-7958
Facsimile:     (719) 471-7958
Email: Steve@ColoradoLawyers.net
*Pro hac vice application pending*

Jessica Christy
CHRISTY LAW LLC
2055 S. Oneida St., Ste. 394
Denver, CO 80224
Telephone:     (720) 729-7016
Email: jessica@christylaw.legal
*Pro hac vice application pending*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDLANDS DEFENSE, ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, YELLOWSTONE TO UINTAS CONNECTION | ) ) ) ) ) Case No. 1:21-cv-425 |
| *Plaintiffs,* | ) ) |
| TAWNYA BRUMMETT, in her official capacity as Boise National Forest Supervisor; RANDY MOORE, in his official capacity as Chief of the United States Forest Service; and UNITED STATES FOREST SERVICE | ) **COMPLAINT FOR** ) **DECLARATORY AND** ) **INJUNCTIVE RELIEF** ) (5 U.S.C. §§ 701-706; 42 U.S.C. § ) 4321 et seq.) ) |
| *Defendants.* | ) |

## INTRODUCTION

1.    This action challenges the Sage Hen Integrated Restoration Project Decision Notice (the "Decision") signed by Boise National Forest Supervisor Tawnya Brummett on April 14, 2021; the associated Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") published by the U.S. Forest Service ("Forest Service") in November 2020; the Forest Service's Biological Assessment ("BA") for Canada lynx, northern Idaho ground squirrel, whitebark pine, and bull trout and bull trout critical habitat dated November 4, 2020; and the U.S. Fish and Wildlife Service's ("FWS") Biological Opinion and Concurrence ("BOC") dated January 6, 2021. Plaintiffs bring this case under the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4332 and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*.

2.    The Sage Hen Integrated Restoration Project ("Sage Hen Project" or the "Project") area in the Boise National Forest spans nearly 67,800 acres, EA at 3, and almost every acre in the Project area will be affected by some level of disturbance during the course of the Project. According to the Decision, the Proposed Action may include up to 19,900 acres of commercial timber harvest spread among 13 to 18 separate logging projects, Decision at 4; up to 83.1 miles of temporary roads, *id.*; between 35,000 and 45,000 acres that could be treated with prescribed fire, EA at 28; and 11,200 acres that could receive hazardous fuels reduction and non-commercial thinning, *id.* at 55. Further, the project area contains occupied critical habitat for bull trout, a species listed as threatened under the ESA since 1999. EA at 21; *Endangered and Threatened Wildlife and Plants; Determination of Threatened Status for Bull Trout in the Coterminous United States*, 64 Fed. Reg. 58,910 (Nov. 1, 1999) (critical habitat designated on October 18, 2010). The project area is shown in Figure 1.

**Figure 1. Map of the Sage Hen Integrated Restoration Project**



3.      The Sage Hen Project is a massive undertaking, but the Forest Service does not have a clear plan for the Project. An examination of the logging and prescribed burn project maps indicate that the Forest Service is attempting to authorize any and all of these activities throughout nearly the entire Project area, with no real decisions made about what treatments to apply where until the project is already underway and can no longer be challenged by the public. Figures 2, 3. Indeed, the prescribed burn map covers the entire project area, including the Snowbank Roadless Area. The Decision seems to anticipate this result: "This decision approves all project activities as described in the environmental assessment and proposed action changes outlined above; however, I am phasing project implementation to ensure the Boise National Forest is following through on the condition-based management requirements and to allow for additional public engagement during pauses between phases." Decision at 4. Once a final decision is made, the public has a limited amount of time to challenge the outcome, so the promise of further "public engagement" is meaningless in a legal sense. This action essentially takes a knife to the heart of NEPA's protections regarding public participation in agency action.

**Figure 2. Final Modified Timber Sale Area.**



**Figure 3. Sage Hen Prescribed Burn Areas.**



4.      The Decision and supporting documents violate NEPA because the Forest Service failed to prepare an Environmental Impact Statement to evaluate the consequences of this massive Project to native animal species and other communities that inhabit the forested areas of the Project area. The Forest Service's conclusion that the Sage Hen Project is not a "major federal action significantly affecting the quality of the human environment" defies all logic when the full extent of its reach is considered. Significant impacts will clearly result from a project such as Sage Hen which involves dozens of separate not-yet-planned actions that will take place on tens of thousands of acres of public land over a 20-year implementation period.

5.      The Decision authorizes these activities on the basis of a "condition-based management" scheme, an approach that does not meet the minimum requirements of NEPA as enacted by the United States Congress and has been soundly rejected by the courts. Condition-based management means the Forest Service authorized the Project before identifying specific locations for logging, road construction, prescribed burns, and other fuel reduction activities. Decision at 4.[1]

6.      The Decision and supporting documents are deficient because they fail to sufficiently (a) identify the specific actions that will be taken by the Forest Service as part of the Project, (b) inventory the vegetation and wildlife resources that will be affected by the Proposed Action, (c) disclose the impacts that will be caused by the proposed landscape-scale vegetation treatments, or (d) detail and evaluate planned mitigation measures. The Forest Service conducted virtually no surveys for any sensitive or indicator species that will be affected by the Project.

---

[1] Indeed, the Forest Service agrees it is delaying taking the hard look required under NEPA, stating it will make decisions "during future pre-implementation planning and survey work required as part of the condition-based management approach." Decision at 4.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*WildLands Defense et al. v. Brummett et al.*

Deferring such surveys to the future as individual actions are implemented violates both the letter and spirit of NEPA. In the absence of detailed information about the proposed actions and where they will occur, the public is deprived of any meaningful opportunity to comment on the Project. As a result, the NEPA analysis does not adequately describe the direct, indirect, or cumulative impacts of the Project on the human environment as required by NEPA.

7.      To the extent that the Forest Service is taking a "phased approach" to the Project and deferring all site-specific analysis into the future, the public is deprived of its primary opportunity to understand, comment on, and influence the Project. For a project of this scale, following an abbreviated review process that lasted from scoping in April 2020 to close of the objection period in December 2020 was clearly inadequate. Future opportunities for meaningful public participation at the site-specific project level will be limited at best and the Forest Service is not legally required to consider or address post-final decision issues raised in subsequent public engagement.

8.      The Forest Service further violated NEPA by failing to provide the public with an opportunity to provide comments on a draft version of the EA and by its failure to specifically respond to the scoping comments and Decision objections that were submitted by the public. The Forest Service simply issued a final EA and FONSI without giving the public an opportunity to provide input on these documents. The agency's response to comments as part of the NEPA process is a critical piece of public involvement because it enables the public to see how comments were addressed, if in fact public comments are considered at all in the proposed

project.[2] This is particularly disturbing as it appears that the Boise Forest Coalition, a non-governmental third party, was granted special access to provide extensive input into the Project outside of the normal public process.[3]

9.     The Project area includes complex vegetative and biological communities that will be harmed by the logging, forest thinning, and burning activities authorized by the Decision. Native species will suffer extreme habitat loss due to the Project, and the prescribed burns across most of the Snowbank Inventoried Roadless Area will cause irreversible impacts to the wildlife that depend upon it, particularly neotropical migratory songbirds, lynx, and wolverine.

10.     By failing to specify where logging would occur or where new roads would be built, and by failing to evaluate the impacts of these location-specific activities, the Decision, EA, and related documents do not provide sufficient information for informed decision-making or informed public participation.

## JURISDICTION, RIGHT OF ACTION AND VENUE

11.     Jurisdiction is proper in this Court under 28 U.S.C. § 1346 because the United States is a defendant and 28 U.S.C. § 1331 (federal question jurisdiction) because this action

---

[2] Although the Forest Service did provide a cursory response to "the major issues that were raised" in the Objection Period, the agency noted that "Forest Service regulations do not require . . . a point-by-point response to objection issues" as is the case with comments on a draft EA or EIS. April 9, 2021 Letter to Objectors at 1. Further, although the Forest Service claims that "[c]omments and how they were considered are included in the project record," Decision at 9, however, it is entirely unclear where in the project record these considerations are included.

[3] Independent of whether the Boise Forest Coalition was granted special access to this project, they are the only non-governmental group without a financial stake in the Project outcome listed in the persons consulted section (other non-governmental entities include "Grazing permittees" and "Campground concessionaire"). EA at 59. Notably, it appears the Boise Forest Coalition disagrees with the Forest Service's characterization of the limited outreach the agency did, stating: "This description does not fit our own experiences." Letter from Boise Forest Coalition to Tawnya Brummett et al., May 13, 2021.

arises under the laws of the United States, including the National Environmental Policy Act, 42

U.S.C. § 4321 *et seq*.; the National Forest Management Act, 16 U.S.C. § 1601 *et seq*.; the

Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. ("APA"); the Declaratory Judgment Act,

28 U.S.C. § 2201 *et seq*.; and the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*.

Jurisdiction is also proper under 28 U.S.C. § 1361 (actions to compel an officer of the United

States to perform his or her duty).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is a

civil action in which officers or employees of the United States or an agency thereof are acting in

their official capacity or under color of legal authority, all or a substantial part of the events or

omissions giving rise to the claims herein occurred within this judicial district, and the affected

public lands and resources are located in this judicial district.

13.     An actual, justiciable controversy now exists between Plaintiffs and Defendants

within the meaning of 28 U.S.C. § 2201 and Plaintiffs are entitled to the relief sought herein to

redress the harm Plaintiffs would otherwise suffer. Although the Decision was issued in April

2021 upon information and belief few components of the Sage Hen Project have been

implemented to date. The requested relief is therefore proper under 28 U.S.C. §§ 2201-2202 and

5 U.S.C. §§ 701-06.

14.     Plaintiffs have exhausted all required administrative remedies prior to bringing

this action, by submitting comments during the Scoping Period and filing formal objections to

the EA and FONSI within the required timeframe pursuant to 36 C.F.R. Part 218.

15.     Plaintiffs have no adequate remedy at law.

16.     The federal government has waived sovereign immunity in this action pursuant to

5 U.S.C. § 702.

## PARTIES

17.     Plaintiff WILDLANDS DEFENSE ("WLD") is a regional, membership, nonprofit organization headquartered in Hailey, Idaho dedicated to protecting and improving the ecological and aesthetic qualities of the wildland and wildlife communities of the western United States for present and future generations. WLD advances its mission by means of landscape and wildlife monitoring and scientific research, by supporting and empowering active public engagement, by publishing and working in support of media outlets, and with legal and administrative advocacy. WLD is headquartered in Hailey, Idaho, has members in several western states, including members and staff that regularly work in and focus on public land and wildlife management in Idaho, and on the Boise National Forest in particular. Members and staff of WLD live, work, and/or recreate throughout central Idaho, and surrounding region, and have worked and recreated on the Boise National Forest generally, and within the Idaho City, Lowman, and Emmett Ranger Districts specifically, on a regular and continuing basis, and intend to do so frequently in the immediate future. WLD brings this action on its own behalf and on behalf of its adversely affected members.

18.     Plaintiff ALLIANCE FOR THE WILD ROCKIES ("AWR") is a tax-exempt, nonprofit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. AWR has over 2,000 individual members, many of whom are located in Idaho in close proximity to the Boise National Forest. Members of AWR observe, enjoy, and appreciate Idaho's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Sage Hen Project area. AWR's members' professional and recreational activities

are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems as set forth below. AWR brings this action on its own behalf and on behalf of its adversely affected members.

19.    Plaintiff NATIVE ECOSYSTEMS COUNCIL ("NEC") is a non-profit corporation. NEC is dedicated to the conservation of natural resources on public lands in the Northern Rockies. Its members use and will continue to use the Boise National Forest for work and for outdoor recreation of all kinds, including fishing, hunting, hiking, horseback riding, and cross-country skiing. The Forest Service's unlawful actions adversely affect NEC's organizational interests, as well as its members' use and enjoyment of the Boise National Forest, including the Sage Hen Project area. NEC brings this action on its own behalf and on behalf of its adversely affected members.

20.    Plaintiff YELLOWSTONE TO UINTAS CONNECTION ("Y2U") is a non-profit public interest organization dedicated to protecting the integrity of habitat for native fish and wildlife in the wildlife corridor that connects the Greater Yellowstone Ecosystem and Northern Rockies to the Uinta Wilderness and Southern Rockies. Members of Y2U work to restore fish and wildlife habitat in the Yellowstone to Uintas Corridor through the application of science, education, and advocacy. Y2U's members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems by approving the challenged Project. Y2U brings this action on its own behalf and on behalf of its adversely affected members.

21.    Members of the Plaintiff organizations reside near, visit, or otherwise use and enjoy the Sage Hen Project area. Members of the Plaintiff organizations use lands throughout the project area for recreation, wildlife viewing, photography, education, and aesthetic and spiritual

enjoyment. The Plaintiffs and their members derive scientific, recreational, aesthetic, and conservation benefits and enjoyment from their use of the area. The commercial logging, roadbuilding, and fire treatments will directly and irreparably injure these interests.

22.     The Plaintiff organizations monitor the use of the forest ecosystems and compliance with the laws respecting these ecosystems, educate their members and the public concerning management of these ecosystems, and advocate policies and practices that conserve the natural value of these ecosystems. Plaintiffs cannot achieve these organizational purposes fully without adequate information and public participation in the processes required by law. The interests and organizational purposes of the plaintiffs are directly and irreparably injured by Defendants' violations of law as described in this Complaint.

23.     Plaintiffs have participated in every step of the administrative process for the Sage Hen Project. Plaintiffs submitted comments during pre-scoping (WLD, AWR, & NEC signed comments dated March 13, 2020), scoping (WLD, AWE, and NEC signed one set of comments dated April 16, 2020 and all Plaintiffs signed a second set dated April 20, 2020), and project phases (WLD, AWR, and NEC signed one set of comments dated December 27, 2020 and all Plaintiffs signed a second set dated December 28, 2020). Once the Project was finalized, Plaintiffs timely filed an objection, dated December 28, 2020. The Forest Service, in its general response document, dismissed all objections raised.

24.     The full name of Defendant UNITED STATES FOREST SERVICE is United States Department of Agriculture, Forest Service. The Forest Service is an agency of the Department of Agriculture ("USDA") entrusted with the administration of the national forests, including the Boise National Forest. The Forest Service prepared the EIS and issued the Record of Decision that form the basis for this lawsuit.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*WildLands Defense et al. v. Brummett et al.*

25.     Defendant TAWNYA BRUMMETT is the Forest Supervisor for the Boise National Forest and signed the Record of Decision for the Sage Hen Project on April 14, 2021. Defendant Brummett is being sued in her official capacity.

26.     Defendant RANDY MOORE is the USDA Forest Service chief and is being sued in his professional capacity. Defendant Moore has the responsibility to ensure that the Forest Service's actions conform to the requirements of our nation's environmental laws, including NEPA and NFMA. If ordered by the Court, Chief Moore has the authority and ability to remedy the harm inflicted by Defendants' actions.

## STATUTORY FRAMEWORK

27.     Plaintiffs incorporate by reference paragraphs 1 - 26 as if fully set forth herein.

### The National Environmental Policy Act

28.     NEPA is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a).

29.     NEPA's goals are to (1) "prevent or eliminate damage to the environment and biosphere," (2) "stimulate the health and welfare of" all people, and (3) "encourage productive and enjoyable harmony" between human kind and the environment. 42 U.S.C. § 4321. NEPA recognizes that "each person should enjoy a healthful environment" and ensures that the federal government uses all practicable means to "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations" and "assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings." *Id.* at § 4331(b)-(c).

30.     To fulfill these purposes, NEPA requires that: (1) agencies take a "hard look" at the environmental impacts of their actions before the actions occur, thereby ensuring "that the agency, in reaching its decision, will have available, and will carefully consider, detailed

information concerning significant environmental impacts," and (2) "the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

31.      NEPA requires federal agencies to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). To determine whether the nature and extent of a proposed action's environmental effects requires preparing an EIS, federal agencies prepare an EA. 40 C.F.R. § 1501.4(b)-(c). If, on the basis of the EA, the agency finds that the proposed action will produce "no significant impact" on the environment, then an EIS need not be prepared. *Id.* at § 1501.4(e). An agency's finding of "no significant impact" and consequent decision not to prepare an EIS can be overturned if the decision was arbitrary, capricious, or an abuse of discretion. *See, e.g., Am. Rivers v. Fed. Energy Regulatory Comm'n*, 895 F.3d 32, 49-52 (D.C. Cir. 2018).

32.      In making the determination of significance, the agency must consider various factors pursuant to 40 C.F.R. § 1508.27(b), including whether the effects on the quality of the human environment are likely to be highly controversial, *id.* at § 1508.27(b)(4); are highly uncertain or involve unique or unknown risks, *id.* at § 1508.27(b)(5); or may adversely affect an endangered or threatened species or its critical habitat, *id.* at § 1508.27(b)(9); and the extent of cumulative impacts from unrelated projects in close proximity to the Project area. A significant environmental effect may exist even if the federal agency believes that on balance the environmental effects of a proposal will be beneficial. *Id.* at § 1508.27(b)(1).

33.      Additionally, in making the significance determination, the agency must "utilize a systemic, interdisciplinary approach . . . and utilize ecological information in the planning and

development of resource-oriented projects," while "recogniz[ing] the worldwide and long-range character of environmental problems." 42 U.S.C. § 4332.

34.    A finding of "no significant impact" will be overturned when an agency commits to an action that will significantly affect the environment without evaluating the impacts of the decision.  NEPA requires an agency to evaluate the environmental effects of its action at the point of commitment. This "critical agency decision" is made when the decision results in "irreversible and irretrievable commitments of resources" to an action that will affect the environment. *Sierra Club v. Peterson*, 717 F.2d 1409, 1414 (D.C. Cir. 1983).

35.    Among other things, the agency's NEPA analysis must assess the cumulative impacts of the action "result[ing] from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. §§ 1508.7, 1508.27(b)(7). This analysis must include more than "conclusory remarks, statements that do not equip a decisionmaker to make an informed decision about alternative courses of action." *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 298 (D.C. Cir. 1988). An agency must prepare an EIS if it is reasonable to anticipate a cumulatively significant impact on the environment. *Grand Canyon Tr. v. Fed. Aviation Admin.*, 290 F.3d 339, 346 (D.C. Cir. 2002).

36.    NEPA is designed to ensure that federal agencies thoroughly evaluate potential environmental impacts of and reasonable alternatives to proposed actions <u>before</u> making a commitment of federal resources. The NEPA review must "serve as the means of assessing the environmental impact of proposed agency actions, rather than justifying decisions already made." *Id.* at § 1502.2(g); see also *id.* at § 1502.5; 32 C.F.R. pt. 651, app. E, § (a)(4).

37.    In evaluating reasonably foreseeable effects, an agency must disclose incomplete, unavailable, or lacking information and either procure the information or include a statement

detailing (1) that such information is incomplete or unavailable, (2) a statement of the information's relevance, (3) a summary of existing alternative credible scientific evidence, and (4) the agency's evaluation of impacts. 40 C.F.R. § 1502.22.

38.     NEPA requires federal agencies to consider alternatives to their proposed actions. 42 U.S.C. § 102(2)(c)(iii).  The alternatives section "is the heart of the environmental impact statement." 40 C.F.R. § 1502.14. In this section, agencies must "[r]igorously explore and objectively evaluate all reasonable alternatives," devoting "substantial treatment to each alternative considered in detail . . . so that reviewers may evaluate their comparative merits." *Id.* at § 1502.14 (a), (b). The core purpose of the alternatives analysis is to "sharply defin[e] the issues and provid[e] a clear basis for choice among options by the decisionmaker and the public." *Id.* at § 1502.14.

<u>The Administrative Procedure Act</u>

39.     The APA provides a right to judicial review for any "person suffering legal wrong because of agency action." 5 U.S.C. § 702. Final agency actions "for which there is no other adequate remedy in a court" are reviewable under the APA. *Id.* at § 704.

40.     Under the APA, a reviewing court shall "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(A). Agency actions may also be set aside if the action is "without observance of procedure required by law." *Id.* at § 706(2)(D). Courts will also set aside agency action that contradicts an agency's prior position, "when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy" and the agency has given no reasoned justification for the change. *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009).

## STATEMENT OF FACTS

41.     Plaintiffs incorporate by reference paragraphs 1 - 40 as if fully set forth herein.

42.     The Boise National Forest ("BNF" or the "Forest"), created in 1908, sits on 2.5 million acres of forest and grassland northeast of Boise, Idaho. Natural resource management activities on BNF lands are guided by the 2010 Amended Boise National Forest Land and Resource Management Plan (the "Forest Plan" or the "Plan"). The Forest Plan notes that the Forest Service "adopted ecosystem management as an operating philosophy." Forest Plan at I-2.

43.     Ponderosa pine and Douglas-fir forests at lower elevations in the Project area provide habitat for white-headed woodpecker and flammulated owl, and winter range for deer and elk. Higher elevation forests provide habitat for Region 4 sensitive species such as goshawk, boreal owls, and three-toed woodpeckers, and summer range for deer, elk, black bear, mountain lions and wolves. The Project area also provides nesting and forage for migratory birds.

44.     The Project area is known to include habitat and individuals of several species listed as threatened under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, including bull trout, Canada lynx, and northern Idaho ground squirrel. The Project area is also home to the whitebark pine, which was recently proposed for listing as a threatened species on December 2, 2020. The Project area includes designated critical habitat for the bull trout.

45.     The Project area is subject to heavy recreational use by the public which already impairs wildlife and watershed health. The Project area and adjacent public and private lands have also been subject to extensive livestock grazing which has resulted in harm to water resources and wildlife habitat.

46.     The Sage Hen project landscape and watersheds provide a great diversity of essential wildlife habitats because of the broad range of native vegetation communities found

here. This habitat diversity is reflected in the many sensitive species, migratory bird species and other wildlife inhabiting Sage Hen. There is also a threatened bull trout population, and a large roadless wild land area. Because they are close to Idaho's population center in the Treasure Valley, Sage Hen forests receive very heavy public recreational use (camping, hiking, wildlife observation, hunting and both motorized and non-motorized use). Much of the surrounding area has been heavily altered, by logging, treatments and roading or encompasses private land. This all serves to make protection of the remaining mature and older forests of Sage Hen critical for biodiversity conservation and climate resiliency.

47.    The Sage Hen Project area provides visitors opportunities to select a Christmas trees or firewood from the forest or engage in mushroom hunting. Visitors to the Sage Hen Project area can hike a number of the area's trails, including the Antelope Trail, located near the southern end of the Project area. The Antelope Trail passes through conifer forests and crosses Antelope Creek to reach spectacular panoramic views of West Mountain and the Squaw Creek drainage area. The Antelope Trail is open to hikers, bikers, and horseback riders. The Poison Creek Trail, located near the northern end of the Project area provides access to the Greenfield Flats, a high elevation meadow, one of the most unique spots on the Emmett Ranger District. At the top, users can take in wonderful views of Squaw Creek, the Snowbank Roadless Area, and Cascade Lake.

48.    The Forest Service initiated public engagement for the Sage Hen Project on February 20, 2020, with a public information meeting. The Forest Service published a legal notice soliciting scoping comments from the public on April 14, 2020. The Forest Service issued an Environmental Assessment and Finding of No Significant Impact on October 28, 2020. On November 13, 2020, the Forest Service issued a draft Decision Notice. The objection period

ended on December 28, 2020. Forest Supervisor Brummett signed the Decision Notice on April 14, 2021.

49. The Sage Hen Project authorizes construction of 92.4 miles of roads and commercially harvesting timber on 19,900 acres over the next twenty years on public lands in Gem and Valley Counties, Idaho. Home to bull trout, rare plants, and sensitive wildlife species, the 68,000-acre project area includes parts of the Snowbank Inventoried Roadless Area and includes the entire Upper Squaw Creek watershed.

50. The Sage Hen Project is a novel management scheme whereby the Forest Service proposes to "pre-authorize" management activities at the landscape level under what it calls a "condition-based management approach" in order to "provide flexibility to address changing conditions" over the course of its two-decade implementation period.

51. To accomplish its goal, authorized Project activities may include timber harvest (19,900 acres maximum), roading (92.4 miles maximum), prescribed burning (35,000 to 45,000 acres maximum), mechanical/non-mechanical fuel reduction and non-commercial thinning (11,200 acres maximum), and reforestation activities (no quantitative estimate provided).

<u>FIRST CLAIM FOR RELIEF</u>
**(National Environmental Policy Act and APA)**
*Failure to Prepare an Environmental Impact Statement*

52. Plaintiffs incorporate by reference paragraphs 1 - 51 as if fully set forth herein.

53. NEPA requires federal agencies to prepare an EIS on any proposal for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

54.     Under NEPA, an agency must prepare an EIS before it makes an "irreversible and irretrievable commitment of resources" to an action that will significantly affect the environment. 42 U.S.C. § 4332(C); *Sierra Club v. Peterson*, 717 F.2d 1409 (D.C. Cir. 1983).

55.     The Forest Service's decision to authorize implementation of the Proposed Action over a 20-year period, including up to 19,900 acres of commercial timber harvest spread among 13 to 18 separate logging projects, Decision at 4; up to 83.1 miles of temporary roads, *id.*; between 35,000 and 45,000 acres that could be treated with prescribed fire, EA at 28; and 11,200 acres that could receive hazardous fuels reduction and non-commercial thinning, *id.* at 55, was an "irreversible and irretrievable commitment of resources" by the Forest Service to allow large scale vegetation treatment on virtually every acre of the landscape-level Project area which will cause significant impacts to the environment.

56.     NEPA further requires that agencies take a "hard look" at the environmental consequences of its proposed actions before the agency chooses a particular course of action, without favoring a pre-determined outcome.

57.     The Forest Service did not produce an EIS prior to its decision to authorize the Proposed Action.

58.     The Forest Service's failure to prepare an EIS evaluating the environmental impacts of the Proposed Action violated NEPA. 42 U.S.C. § 4332(2)(C). The Forest Service's Decision Notice was therefore arbitrary, capricious, not in accordance with law, and not in accordance with the procedures required by law. 5 U.S.C. § 706(2)(A), (D).

<u>SECOND CLAIM FOR RELIEF</u>
**(National Environmental Policy Act and APA)**
*Failure to Adequately Disclose & Analyze Environmental Impacts*

59.     Plaintiffs incorporate by reference paragraphs 1 - 58 as if fully set forth herein.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
*WildLands Defense et al. v. Brummett et al.*

60.     NEPA regulations require federal agencies to discuss the direct, indirect, and cumulative effects of their actions in an EA. 40 C.F.R. §§ 1502.16, 1508.8.  The EA should provide a clear basis for choice among alternatives. 40 C.F.R. § 1502.14.

61.     The EA does not provide site-specific information about the Sage Hen Project or its impacts. The EA does not disclose specific locations where logging, road construction, or prescribed burns will occur. As of October 2021, the Forest Service had not disclosed where within the project area the authorized logging, road construction or prescribed burns would take place.

62.     By using the "condition-based management" approach, the EA does not adequately address the direct, indirect, and cumulative effects of the Project on the human environment. The EA does not provide a clear basis for choice among alternatives. The EA does not contain sufficient information to foster informed decision-making or informed public participation. For these reasons, the EA violates NEPA, 42 U.S.C. § 4332(2)(C), and is therefore "not in accordance with law" under 5 U.S.C. § 706(2)(A) and "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D).

63.     The Forest Service utterly failed to examine the impacts from climate change to bull trout critical habitat and to the bull trout populations, despite information indicating new reports were available for review.

64.     The Forest Service's own NEPA regulations require any agency decision to include consideration of public comments and to make a decision from a range of alternatives analyzed in the environmental documents. 36 C.F.R. § 220.4(c). Further, the Forest Service relies on a CEQ memo, Guidance on the Consideration of Past Actions in Cumulative Effects Analysis (June 24, 2005) ("CEQ Memo"), to analyze the direct, indirect, and cumulative impacts to any

action. *Id.* at § 220.4(f). This memo requires agencies to "descri[be] the identifiable present effects of past actions to the extent that they are relevant and useful." CEQ Memo at 1.

65.     The Forest Service's failure to adequately disclose the specific locations where actions will occur under the Proposed Action or adequately analyze the environmental impacts of the Proposed Action violated NEPA. 42 U.S.C. § 4332(2)(C). The Forest Service's Decision Notice was therefore arbitrary, capricious, not in accordance with law, and not in accordance with the procedures required by law. 5 U.S.C. § 706(2)(A), (D).

THIRD CLAIM FOR RELIEF
**(National Environmental Policy Act and APA)**
*Failure to Consider Project Alternatives that Meet the Need for Action*

66.     Plaintiffs incorporate by reference paragraphs 1 - 65 as if fully set forth herein.

67.     The Forest Service's regulations implementing NEPA contain specific requirements applicable to the agency's preparation of an EA.  When considering project alternatives, the alternatives must "meet the need for action." 36 C.F.R. § 220.7(b)(2).

68.     Although no specific number of alternatives to any project are required, the alternatives must be in line with the original proposal such that it will meet the same needs as the primary proposal.

69.     Here, the Forest Service considered only the Proposed Action and a "no-action alternative," under which "[e]xisting vegetation conditions would continue to trend away from desired conditions and hazardous fuels would continue to build up," among other alleged detrimental impacts. EA at 49.

70.     However, the Forest Service states the Sage Hen Project is needed to combat the very problems the "no-action alternative" would exacerbate. EA at 1-2.

71.     Because the Forest Service "no-action alternative" does not meet the need for action based on the needs described in the EA, the Forest Service did not consider any valid alternatives.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court grant the following relief:

A.      Declare that any implementation of the Defendants' Decision Notice violates NEPA and APA and their respective implementing regulations; and

B.      Order, adjudge, and declare that the Sage Hen Integrated Restoration Project EA, FONSI, BA, BOC, and Decision Notice are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under NEPA and the APA, and reverse and set aside the EA, FONSI, BA, BOC, and Decision; and

C.      Order the Defendants to comply with the requirements of NEPA and APA and their respective implementing regulations by preparing an Environmental Impact Statement that fully discloses and analyzes the interrelated environmental, cultural, economic, and socioeconomic impacts, effects and consequences associated with the Sage Hen Project as described above; and

D.      Order the Defendants to comply with the requirements of NEPA and APA and their respective implementing regulations by identifying with specificity locations for logging, road construction, and prescribed burns approved by the Decision and then analyzing the environmental impacts of such activities on wildlife habitat, threatened and endangered species, and native vegetation in the Project area using the best available scientific information and data; and

E.      Vacate the Forest Service's decision to implement the Proposed Action; and

F.      Enter appropriate preliminary and permanent injunctive relief prohibiting the

Forest Service from permitting or allowing any implementation of the Proposed Action in order

to ensure that the Forest Service complies with federal law and avoids irreparable harm to the

environment until such time as the Forest Service is in full compliance with the law; and

G.      Award Plaintiffs their reasonable attorneys' fees, costs, expenses and

disbursements associated with this action under the Equal Access to Justice Act, 28 U.S.C. §

2412 et seq., and any and all other provisions of law; and

H.      Award such other relief as this Court deems just and proper.

Respectfully submitted this 1st day of November, 2021.


/s/ Brian A. Ertz_____
Brian A. Ertz, ISB #9960
**ERTZ LAW, PLLC**
380 S. 4th St., Ste. 104
Boise, ID 83702
P.O. Box 665
Boise, ID 83701
Telephone: (208) 918-1663
E-mail: brian@ertzlaw.org
Attorney for Plaintiffs


/s/ Stephen D. Harris_____
Stephen D. Harris, Colo. Bar. #24178
**ALPERN MYERS STUART LLC**
14 North Sierra Madre Street, Suite A
Colorado Springs, Colorado 80903
Telephone: (719) 471-7958
Facsimile: (719) 471-7958
E-mail: steve@coloradolawyers.net
*Pro hac vice application pending*
Attorney for Plaintiffs